M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
DAVID ALBERTI (SBN 220265)
dalberti@feinday.com
SAL LIM (SBN 211836)
slim@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI LIM &**
**BELLOLI LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel:  650.618.4360
Fax:  650.618.4368

*Attorneys for* Plaintiff
Monument Peak Ventures, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONUMENT PEAK VENTURES, LLC | CASE NO. 2:18-cv-02210 |
| Plaintiff, | **COMPLAINT FOR PATENT** |
| v. | **INFRINGEMENT** |
| SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE D.V., and DJI TECHNOLOGY INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Monument Peak Ventures, LLC ("MPV"), by and through the undersigned counsel, hereby brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos. 6,282,317 ("the '317 patent"), 6,760,485 ("the '485 patent"), 6,781,713 ("the '713 patent"), 8,675,112 ("the '112 patent") and 8,750,674 ("the '674 patent") against one or more of SZ DJI Technology Co, Ltd., SJI Europe D.V., and DJI Technology Inc. ("the DJI Defendants"), and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This is an action for patent infringement. MPV alleges that the DJI Defendants infringe one or more of the '317 patent, the '485 patent, the '713 patent, the '112 patent, and the '674 patent, copies of which are attached as Exhibits A-E, respectively (collectively "the Asserted Patents").

2. On or about September 29, 2017, MPV, a technology licensing company, approached the DJI Defendants to offer a license to MPV's Kodak portfolio. Since MPV acquired the Kodak portfolio it has successfully licensed several companies without resorting to litigation. Consistent with MPV's overall strategy to use litigation only as a last resort, MPV expressed on several occasions its desire to consummate a license with the DJI Defendants outside of litigation.

3. On or about October 4, 2017, MPV informed the DJI Defendants of their infringement through a data room that included a full list of all patents owned by MPV and evidence of use presentations detailing the DJI Defendants' infringement. MPV made several requests to have a substantive discussion on the data room materials so as to avoid litigation, however, the DJI Defendants never agreed to such a discussion.

4. MPV alleges that the DJI Defendants directly and indirectly infringe the Asserted Patents by making, using, offering for sale, selling, and/or importing

1    camera products and related hardware and software.  MPV seeks damages and other
2    relief for the DJI Defendants' infringement of the Asserted Patents.

3    **The Asserted Patents Come From the Iconic Kodak Patent Portfolio**

4         5.      The Asserted Patents claim inventions born from the ingenuity of the
5    Eastman  Kodak  Company  ("Kodak"),  an  iconic  American  imaging  technology
6    company that dates back to the late 1800s.  The first model of a Kodak camera was
7    released in 1888.

 

8    6.      In 1935 Kodak introduced "Kodachrome," a color reversal stock for
movie and slide film.  In 1963 Kodak introduced the Instamatic camera, an easy-to-
load point-and-shoot camera.

 

24        7.      By 1976 Kodak was responsible for 90% of the photographic film and
25   85% of the cameras sold in the United States.

26        8.      At the peak of its domination of the camera industry, Kodak invented
27   the first self-contained digital camera in 1975.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



9.    By 1986 Kodak had created the first megapixel sensor that was capable of recording 1,400,000 pixels.  While innovating in the digital imaging space Kodak developed an immense patent portfolio and extensively licensed its technology in the space.  For example, in 2010, Kodak received $838,000,000 in patent licensing revenue.  As part of a reorganization of its business, Kodak sold many of its patents to some of the biggest names in technology that included Google, Facebook, Amazon, Microsoft, Samsung, Adobe Systems, HTC and others for $525,000,000.

10.    While scores of digital imaging companies have paid to license the Kodak patent portfolio owned by MPV, the DJI Defendants have refused to do so without justification.

## THE PARTIES

11.    Plaintiff MPV is a Texas limited liability company with its principal place of business in Plano, Texas.

12.    Upon information and belief, SZ DJI Technology Co, Ltd. is a Chinese corporation with a place of business at Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Avenue, Nanshan District, Shenzhen, China.

13.    Upon information and belief, DJI Europe D.V. is a European corporation with a place of business at Bijdorp-Oost 6, 2992 LA Barendrecht, Netherlands.

COMPLAINT FOR PATENT INFRINGEMENT

14.     Upon information and belief, DJI Technology Inc. is a California corporation with places of business in Burbank and Cerritos, California.

15.     Upon information and belief, one or more of the DJI Defendants own a majority stake in the Hasselblad.  Upon information and belief, certain products that are made, sold, offered for sale and imported by Hasselblad are incorporated into products that are made, used, sold, offered for sale and imported by the DJI Defendants.  *See*, *e.g.*, https://www.hasselblad.com/a6d-100c-dji-m600-pro/.

## JURISDICTION AND VENUE

16.     This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

17.     This Court has both general and specific personal jurisdiction over the DJI Defendants because the DJI Defendants have committed acts within the Central District of California giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over the DJI Defendants would not offend traditional notions of fair play and substantial justice. The DJI Defendants, directly and through subsidiaries and intermediaries (including distributors, retailers, franchisees and others), have committed and continue to commit acts of infringement in this District by, among other things, making, using, testing, selling, importing, and/or offering for sale products that infringe the Asserted Patents.

18.     Venue is proper in this district and division under 28 U.S.C. §§1391(b)-(d) and 1400(b) because the DJI Defendants transact business in the Central District of California and have committed and continue to commit acts of direct and indirect infringement in the Central District of California.

## COUNT 1:  INFRINGEMENT OF THE '317 PATENT

19.     The allegations of paragraphs 1-18 of this Complaint are incorporated by reference as though fully set forth herein.

COMPLAINT FOR PATENT INFRINGEMENT

20.    MPV owns by assignment the entire right, title, and interest in the '317 patent.

21.    The '317 patent was issued by the United States Patent and Trademark Office on July 14, 2015 and is titled "Method for Automatic Determination of Main Subjects in Photographic Images." A true and correct copy of the '317 patent is attached as Exhibit A.

22.    Upon information and belief, the DJI Defendants have directly infringed at least claim 1 of the '317 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their camera drones with ActiveTrack technology (the "DJI Camera Drones"), such as without limitation, the Phantom 4 Pro ("the '317 Infringing Instrumentalities") in an exemplary manner as described below:

23.    One or more of the '317 Infringing Instrumentalities meet all the limitations of claim 1 of the '317 patent. In particular, the DJI Camera Drones use software that performs a method for detecting a main subject in an image, which receives a digital image.



An uprated camera is equipped with a 1-inch 20-megapixel sensor capable of shooting 4K/60fps video and Burst Mode stills at 14 fps. The adoption of titanium alloy and magnesium alloy construction increases the rigidity of the airframe and reduces weight, making the Phantom 4 Pro similar in weight to the Phantom 4. The FlightAutonomy system adds dual rear vision sensors and infrared sensing systems for a total of 5-direction of obstacle sensing and 4-direction of obstacle avoidance.

COMPLAINT FOR PATENT INFRINGEMENT

http://www.dii.com/phantom-4pro?site=brandsite&from=nav.

24.     The DJI Camera Drones also extract regions of arbitrary shape and size defined by actual objects from the digital image.  For example, the DJI Camera Drones use ActiveTrack to identify and follow "a chosen subject throughout the shot, whether they are walking along a trail, driving a car, or even swimming in the ocean!"  *See* https://store.dji.com/guides/film-like-a-pro-with-activetrack/.

The Phantom 4 Pro automatically recognizes subjects, follows and captures them as they move, making it easier to get complex shots.

Following fast-moving objects can be very challenging, but advanced image recognition algorithms used by the Phantom 4 Pro allow it to recognize and track the object while keeping it in frame. This new algorithm also recognizes more subjects, from people to vehicles to animals, and will adjust its flight dynamics to match, ensuring smoother shots.

https://www.dji.com/phantom-4-pro?site=brandsite&from=nav.

25.     The DJI Camera Drones extract for each of the regions at least one structural saliency feature and at least one semantic saliency feature.  For example, the DJI Camera Drones extract structural and semantic saliency features from regions including shapes, colors and subjects such as people, vehicles and animals.

COMPLAINT FOR PATENT INFRINGEMENT



The Phantom 4 Pro automatically recognizes subjects, follows and captures them as they move, making it easier to get complex shots.

Following fast-moving objects can be very challenging, but advanced image recognition algorithms used by the Phantom 4 Pro allow it to recognize and track the object while keeping it in frame. This new algorithm also recognizes more subjects, from people to vehicles to animals, and will adjust its flight dynamics to match, ensuring smoother shots.

https://www.dji.com/phantom-4-pro?site=brandsite&from=nav.

"*We taught [the Phantom 4] to understand the physiognomy of a person so that it can automatically say, 'this is the shape that a person is,'*" says Perry.

http://time.com/4243394/dji-phantom-4-activetrack/, quoting Michael Perry, DJI's director of strategic partnerships (emphasis added).

"The way ActiveTrack *is able to identify and follow its subject is by color contrast between the subject and background*. *This means that the greater the color difference, the better ActiveTrack performs.* Make sure that your subject is wearingclothing that helps them stick out of the environment. For example, if your friend is snowboarding, a red outfit will do much better than a white one."

https://store.dji.com/guides/film-like-a-pro-with-activetrack/ (emphasis added).

    26.    The DJI Camera Drones integrate the structural saliency feature and the semantic feature using a probabilistic reasoning engine into an estimate that each region is the main subject.  For example, the DJI Camera Drones' engine uses the structural and semantic features in an algorithm that determines a probability or

"confidence" that a region is the main subject.

The Phantom 4 Pro automatically recognizes subjects, follows and captures them as they move, making it easier to get complex shots.

Following fast-moving objects can be very challenging, but advanced image recognition algorithms used by the Phantom 4 Pro allow it to recognize and track the object while keeping it in frame. This new algorithm also recognizes more subjects, from people to vehicles to animals, and will adjust its flight dynamics to match, ensuring smoother shots.

https://www.dji.com/phantom-4-pro?site=brandsite&from=nav.

"*If the tracking algorithm looses [sic] sufficient confidence in tracking the target*, then the aircraft will stop flying relative to the object and either notify the user (through execution state) that the target is lost or it needs another confirmation that the target is correct." https://developer.dji.com/iframe/mobile-sdk-doc/android/reference/dji/sdk/MissionManager/DJIActiveTrackMission.html (emphasis added).

27.    The DJI Defendants have thus infringed and continue to infringe at least claim 1 of the '317 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '317 Infringing Instrumentalities, and operating such that all steps of at least claim 1 are performed.

28.    The users, customers, agents and/or other third parties of the '317 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 1 of the '317 patent by using the '317 Infringing Instrumentalities.

29.    The DJI Defendants have, since at least no later than October 4, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '317 Infringing Instrumentalities directly infringe the '317 patent.

30.    The DJI Defendants' knowledge of the '317 patent, which covers operating the '317 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '317 patent are met, made it known to the DJI Defendants that the third-party infringers' use of the '317 Infringing

Instrumentalities would directly infringe the '317 patent, or, at the very least, render the DJI Defendants willfully blind to such infringement.

31.     Having known or been willfully blind to the fact that the third-party infringers' use of the '317 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '317 patent would directly infringe the '317 patent, the DJI Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '317 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '317 Infringing Instrumentalities, and by, for example, marketing '317 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '317 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '317 Infringing Instrumentalities. *See*, *e.g.,* DJI Active Track: Make the Drones Follow You, https://store.dji.com/guides/film-like-a-pro-with-activetrack/, and the Phantom 4 User Manual at pp. 21-24, instructing customers how to use ActiveTrack on their DJI products to detect and track the location of a main subject in a digital image.

32.     The DJI Defendants induce the third-party infringers to infringe at least claim 1 of the '317 patent by directing or encouraging them to operate the '317 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 1 of the '317 patent.  For example, the DJI Defendants advertise and promote the features of the '317 Infringing Instrumentalities and encourage the third-party infringers to operate the '317 Infringing Instrumentalities in an infringing manner.  The DJI Defendants further provide technical assistance as to how the '317 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g*., DJI Active Track: Make the Drones Follow You, https://store.dji.com/guides/film-like-a-pro-with-activetrack/, and the Phantom 4 User Manual at pp. 21-24, instructing customers how to use

ActiveTrack on their DJI products to detect and track the location of a main subject in a digital image).  In response, the third-party infringers acquire and operate the '317 Infringing Instrumentalities such that all limitations of claim 1 of the '317 patent are practiced.

33.   Thus, the DJI Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 1 of the '317 patent, and the DJI Defendants have known of or been willfully blind to such infringement.  The DJI Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '317 Infringing Instrumentalities.

34.   Based on, among other things, the foregoing facts, the DJI Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '317 patent.

35.   Further, the DJI Defendants sell, provide and/or license to the third-party infringers '317 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the DJI Defendants—to be used as components and material parts of the inventions covered by the '317 patent.  For example, the DJI Defendants provide camera drone hardware and related software which the third-party infringers use in a manner such that all limitations of at least claim 1 of the '317 patent are met, and without which the third-party infringers would be unable to use and avail the '317 Infringing Instrumentalities in their intended manner.

36.   Upon information and belief, the DJI Defendants also knew that the '317 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 1 of the '317 patent.

37.   The main subject detection technology in the '317 Infringing Instrumentalities is specially made and adapted to infringe at least claim 1 of the

'317 patent.  Upon information and belief, the main subject detection technology in the '317 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '317 Infringing Instrumentalities solely in a manner that is covered by the '317 patent, it does not have a substantial non-infringing use.  At least by no later than October 4, 2017, based on the foregoing facts, the DJI Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in— the'317 Infringing Instrumentalities in a manner that is covered by the '317 patent.

38.    Based on, among other things, the foregoing facts, the DJI Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 1 of the '317 patent under 35 U.S.C. § 271(c).

39.    The DJI Defendants' acts of infringement of the '317 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least October 4, 2017, the DJI Defendants have willfully infringed the '317 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '317 patent, the DJI Defendants have made the business decision to "efficiently infringe" the '317 patent.  In doing so, the DJI Defendants willfully infringe the '317 patent.

40.    The DJI Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the DJI Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 2:  INFRINGEMENT OF THE '485 PATENT

41.    The allegations of paragraphs 1-40 of this Complaint are incorporated by reference as though fully set forth herein.

42.    MPV owns by assignment the entire right, title, and interest in the '485 patent.

43.     The '485 patent was issued by the United States Patent and Trademark Office on July 6, 2004 and is titled "Nonlinearly Modifying a Rendered Digital Image." A true and correct copy of the '485 patent is attached as Exhibit C.

44.     Upon information and belief, the DJI Defendants have directly infringed at least claim 21 of the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their post processing software, such as CineLight software, ("the '485 Infringing Instrumentalities") in an exemplary manner as described below.

45.     One or more of the '485 Infringing Instrumentalities meet all the limitations of claim 21 of the '485 patent. In particular, the '485 Infringing Instrumentalities perform a method for processing a rendered image, including allowing a single user adjustable exposure setting to be changed.



https://www.dji.com/zenmuse-x5r

COMPLAINT FOR PATENT INFRINGEMENT

[16] Color Calibrations

A. Basic: Adjust the white balance, exposure and saturation.

B. Tone Curve: Adjust up to 5 points on the tone curve.

C. Denoise and Sharpen

    Adjust the denoise and sharpening values.

  

      A          B          C

https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf.

    46.    The '485 Infringing Instrumentalities also select an exposure modification transform responsive to changes in the exposure setting the transform accounting for a rendering used to produce the rendered image and effecting a change that appears as if a different exposure level was used to capture the image.

[15] Properties

A. RGB Histogram

B. Hover Pixel Color

C. Image Infomration



COMPLAINT FOR PATENT INFRINGEMENT

[16] Color Calibrations

    A. Basic: Adjust the white balance, exposure and saturation.

    B. Tone Curve: Adjust up to 5 points on the tone curve.

    C. Denoise and Sharpen

      Adjust the denoise and sharpening values.

  

      A                  B                  C

https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf

    47.    The '485 Infringing Instrumentalities also use the selected exposure modification transform to transform the rendered image.





https://www.youtube.com/watch?v=NuAS_Ytk3Z4

48.     The DJI Defendants have thus infringed and continue to infringe at least claim 21 of the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '485 Infringing Instrumentalities, and operating such that all steps of at least claim 21 are performed.

49.     The users, customers, agents and/or other third parties of the '485 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 21 of the '485 patent by using the '485 Infringing Instrumentalities.

50.     The DJI Defendants have, since at least no later than October 4, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '485 Infringing Instrumentalities directly infringe the '485 patent.

51.     The DJI Defendants' knowledge of the '485 patent, which covers operating the '485 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 21 of the '485 patent are met, made it known to

COMPLAINT FOR PATENT INFRINGEMENT

the DJI Defendants that the third-party infringers' use of the '485 Infringing Instrumentalities would directly infringe the '485 patent, or, at the very least, render the DJI Defendants willfully blind to such infringement.

52.     Having known or been willfully blind to the fact that the third-party infringers' use of the '485 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 21 of the '485 patent  would directly infringe the '485 patent, the DJI Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '485 Infringing Instrumentalities, and by, for example, marketing '485 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '485 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '485 Infringing Instrumentalities.  *See*, *e.g.*, DJI Cinelight User Manual at pp. 3-7, https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf, instructing users to adjust the exposure using a single exposure setting in a manner that performs the claimed method.

53.     The DJI Defendants induce the third-party infringers to infringe at least claim 21 of the '485 patent by directing or encouraging them to operate the '485 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 21 of the '485 patent.  For example, the DJI Defendants advertise and promote the features of the '485 Infringing Instrumentalities on their website and encourage the third-party infringers to operate the '485 Infringing Instrumentalities in an infringing manner. The DJI Defendants further provide technical assistance as to how the '485 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, DJI Cinelight User Manual at pp. 3-7,

https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf, instructing users to adjust the exposure using a single exposure setting in a manner that performs the claimed method).  In response, the third-party infringers acquire and operate the '485 Infringing Instrumentalities such that all limitations of claim 21 of the '485 patent are practiced.

54.     Thus, the DJI Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 21 of the '485 patent, and the DJI Defendants have known of or been willfully blind to such infringement.  The DJI Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '485 Infringing Instrumentalities.

55.     Based on, among other things, the foregoing facts, the DJI Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 21 of the '485 patent.

56.     Further, the DJI Defendants sell, provide and/or license to the third-party infringers '485 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the DJI Defendants—to be used as components and material parts of the inventions covered by the '485 patent.  For example, the DJI Defendants provide hardware and related image processing software which the third-party infringers use in a manner such that all limitations of at least claim 21 of the '485 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '485 Infringing Instrumentalities in their intended manner.

57.     Upon information and belief, the DJI Defendants also knew that the '485 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 21 of the '485 patent.

58.     The image processing / exposure modification transform technology in

COMPLAINT FOR PATENT INFRINGEMENT

the '485 Infringing Instrumentalities is specially made and adapted to infringe at least claim 21 of the '485 patent.  Upon information and belief, the image processing / exposure modification transform technology in the '485 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '485 Infringing Instrumentalities solely in a manner that is covered by the '485 patent, it does not have a substantial non-infringing use.  At least by no later than October 4, 2017, based on the foregoing facts, the DJI Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '485 Infringing Instrumentalities in a manner that is covered by the '485 patent.

59.     Based on, among other things, the foregoing facts, the DJI Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 21 of the '485 patent under 35 U.S.C. § 271(c).

60.     The DJI Defendants' acts of infringement of the '485 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least October 4, 2017, the DJI Defendants have willfully infringed the '485 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '485 patent, the DJI Defendants have made the business decision to "efficiently infringe" the '485 patent.  In doing so, the DJI Defendants willfully infringe the '485 patent.

61.     The DJI Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the DJI Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 3:  INFRINGEMENT OF THE '713 PATENT

62.     The allegations of paragraphs 1-61 of this Complaint are incorporated by reference as though fully set forth herein.

COMPLAINT FOR PATENT INFRINGEMENT

63.     MPV owns by assignment the entire right, title, and interest in the '713 patent.

64.     The '713 patent was issued by the United States Patent and Trademark Office on August 24, 2004 and is titled "Correcting Exposure in a Rendered Digital Image."  A true and correct copy of the '713 patent is attached as Exhibit C.

65.     Upon information and belief, the DJI Defendants have directly infringed at least claim 25 of the '713 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their post processing software, such as CineLight software, ("the '713 Infringing Instrumentalities") in an exemplary manner as described below.

66.     One or more of the '713 Infringing Instrumentalities meet all the limitations of claim 25 of the '713 patent.  In particular, the '713 Infringing Instrumentalities perform a method for processing an image, including allowing a single user adjustable exposure setting to be changed.



https://www.dji.com/zenmuse-x5r

COMPLAINT FOR PATENT INFRINGEMENT

**[16] Color Calibrations**

    A. Basic: Adjust the white balance, exposure and saturation.

    B. Tone Curve: Adjust up to 5 points on the tone curve.

    C. Denoise and Sharpen

       Adjust the denoise and sharpening values.



| A | B | C |
|---|---|---|

https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf

67.    The '713 Infringing Instrumentalities also select an exposure modification transform responsive to changes in the exposure setting which transform accounts for a rendering used to produce the rendered digital image and which appears as if a different exposure level was used by the image capture device.

COMPLAINT FOR PATENT INFRINGEMENT

## [15] Properties

A. RGB Histogram

B. Hover Pixel Color

C. Image Infomration



## [16] Color Calibrations

A. Basic: Adjust the white balance, exposure and saturation.

B. Tone Curve: Adjust up to 5 points on the tone curve.

C. Denoise and Sharpen

Adjust the denoise and sharpening values.



https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf

68. The '713 Infringing Instrumentalities also use the selected transform to transform the image and display the image as the exposure setting is changed.

https://www.youtube.com/watch?v=NuAS_Ytk3Z4

69.     The DJI Defendants have thus infringed and continue to infringe at

least claim 25 of the '713 patent by making, using, testing, selling, offering for sale,

importing and/or licensing the '713 Infringing Instrumentalities, and operating such

COMPLAINT FOR PATENT INFRINGEMENT

1      that all steps of at least claim 25 are performed.

2          70.     The users, customers, agents and/or other third parties of the '713

3 Infringing Instrumentalities (collectively, "third-party infringers") have been and

4 are now infringing, including under 35 U.S.C. § 271(a), at least claim 25 of the

5 '713 patent by using the '713 Infringing Instrumentalities.

6          71.     The DJI Defendants have, since at least no later than October 4, 2017,

7 known or been willfully blind to the fact that the third-party infringers' use of the

8 '713 Infringing Instrumentalities directly infringe the '713 patent.

9          72.     The DJI Defendants' knowledge of the '713 patent, which covers

10 operating the '713 Infringing Instrumentalities in their intended manner and such

11 that all limitations of at least claim 25 of the '713 patent are met, made it known to

12 the DJI Defendants that the third-party infringers' use of the '713 Infringing

13 Instrumentalities would directly infringe the '713 patent, or, at the very least, render

14 the DJI Defendants willfully blind to such infringement.

15          73.     Having known or been willfully blind to the fact that the third-party

16 infringers' use of the '713 Infringing Instrumentalities in their intended manner and

17 such that all limitations of at least claim 25 of the '713 patent would directly

18 infringe the '713 patent, the DJI Defendants, upon information and belief, actively

19 encouraged and continue to actively encourage the third-party infringers to directly

20 infringe the '713 patent by making, using, testing, selling, offering for sale,

21 importing and/or licensing said '713 Infringing Instrumentalities, and by, for

22 example, marketing '713 Infringing Instrumentalities to the third-party infringers;

23 supporting and managing the third-party infringers' continued use of the '713

24 Infringing Instrumentalities; and providing technical assistance to the third-party

25 infringers during their continued use of the '713 Infringing Instrumentalities. *See*,

26 *e.g.*, DJI Cinelight User Manual at pp. 3-7,

27 https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_

28 160324.pdf, instructing users to adjust the exposure using a single exposure setting

in a manner that performs the claimed method.

74.     The DJI Defendants induce the third-party infringers to infringe at least claim 25 of the '713 patent by directing or encouraging them to operate the '713 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 25 of the '713 patent.  For example, the DJI Defendants advertise and promote the features of the '713 Infringing Instrumentalities on their website and encourage the third-party infringers to operate the '713 Infringing Instrumentalities in an infringing manner. The DJI Defendants further provide technical assistance as to how the '713 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, DJI Cinelight User Manual at pp. 3-7, https://dl.djicdn.com/downloads/zenmuse_x5s/en/DJI_Cinelight_User_Manual_en_160324.pdf, instructing users to adjust the exposure using a single exposure setting in a manner that performs the claimed method).  In response, the third-party infringers acquire and operate the '713 Infringing Instrumentalities such that all limitations of claim 25 of the '713 patent are practiced.

75.     Thus, the DJI Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 25 of the '713 patent, and the DJI Defendants have known of or been willfully blind to such infringement.  The DJI Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '713 Infringing Instrumentalities.

76.     Based on, among other things, the foregoing facts, the DJI Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 25 of the '713 patent.

77.     Further, the DJI Defendants sell, provide and/or license to the third-party infringers '713 Infringing Instrumentalities that are especially made and

adapted—and specifically intended by the DJI Defendants—to be used as components and material parts of the inventions covered by the '713 patent. For example, the DJI Defendants provide hardware and related image processing software which the third-party infringers use in a manner such that all limitations of at least claim 25 of the '713 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '713 Infringing Instrumentalities in their intended manner.

78.   Upon information and belief, the DJI Defendants also knew that the '713 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 25 of the '713 patent.

79.   The image processing / exposure modification transform technology in the '713 Infringing Instrumentalities is specially made and adapted to infringe at least claim 25 of the '713 patent. Upon information and belief, the image processing / exposure modification transform technology in the '713 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '713 Infringing Instrumentalities solely in a manner that is covered by the '713 patent, it does not have a substantial non-infringing use. At least by no later than October 4, 2017, based on the foregoing facts, the DJI Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '713 Infringing Instrumentalities in a manner that is covered by the '713 patent.

80.   Based on, among other things, the foregoing facts, the DJI Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 25 of the '713 patent under 35 U.S.C. § 271(c).

81.   The DJI Defendants' acts of infringement of the '713 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). Since at least October 4, 2017, the DJI Defendants have willfully infringed the '713 patent by refusing to take a license and continuing the

foregoing infringement.  Instead of taking a license to the '713 patent, the DJI Defendants have made the business decision to "efficiently infringe" the '713 patent.  In doing so, the DJI Defendants willfully infringe the '713 patent.

82.    The DJI Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the DJI Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 4:  INFRINGEMENT OF THE '112 PATENT

83.    The allegations of paragraphs 1-82 of this Complaint are incorporated by reference as though fully set forth herein.

84.    MPV owns by assignment the entire right, title, and interest in the '112 patent.

85.    The '112 patent was issued by the United States Patent and Trademark Office on August 9, 2011 and is titled "Imaging Device Providing Capture Location Guidance."  A true and correct copy of the '112 patent is attached as Exhibit D.

86.    Upon information and belief, the DJI Defendants have directly infringed at least claim 12 of the '112 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their DJI drone cameras (e.g., Inspire 2) with the CrystalSky Monitor running the DJI GO 4 application ("the '112 Infringing Instrumentalities") in an exemplary manner as described below.

87.    One or more of the '112 Infringing Instrumentalities meet all the limitations of claim 12 of the '112 patent.  In particular, the '112 Infringing Instrumentalities practice a method for displaying guidance information for capturing a digital image at a location of a first scene:

COMPLAINT FOR PATENT INFRINGEMENT



https://www.dji.com/crystalsky.

http://www.dji.com/inspire-2?site=brandsite&from=nav.

COMPLAINT FOR PATENT INFRINGEMENT

# DJI GO 4 App

The DJI GO 4 app is a new mobile app designed specifically for the Inspire 2. Use this app to control the gimbal, camera and other features of your flight system. The app also comes with Map, Store a User Center, for configuring your aircraft and sharing your content with friends. It is recommended that you use a tablet for the best experience.



https://dl.djicdn.com/downloads/inspire_2/20170711/INSPIRE_2_UM_V1.4_EN.pdf

COMPLAINT FOR PATENT INFRINGEMENT

## TapFly

### Introduction

With the TapFly feature, users can now tap on the mobile device screen to fly in the designated direction without using the remote controller. The aircraft will automatically avoid obstacles it sees or brake and hover provided that the lighting is appropriate (< 300 lux) nor too bright (> 10,000 lux).

### Using TapFly

Ensure the battery level is more than 50% for the Intelligent Flight Battery. And the aircraft is in P-mode. Then follow the steps below to use TapFly:

2. Launch the DJI GO 4 app and tap 🤖, then tap ⟨·⟩, read and understand the prompts.



https://dl.djicdn.com/downloads/inspire_2/20170711/INSPIRE_2_UM_V1.4_EN.pdf

3. Tap once on the target direction and wait for GO icon to appear. Tap again to confirm the selection and the aircraft will automatically fly towards the target direction.



https://dl.djicdn.com/downloads/inspire_2/20170711/INSPIRE_2_UM_V1.4_EN.pdf

88.　The '112 Infringing Instrumentalities capture a digital image of a first scene using the guidance information:

COMPLAINT FOR PATENT INFRINGEMENT

https://www.dji.com/goapp.

89.    The '112 Infringing Instrumentalities analyze pixel data of the first digital image to determine a location of a second scene and guidance information for locating the second scene. The location of the second scene is selected from a plurality of locations and differs from the location of the first scene.



http://www.dji.com/inspire-2?site=brandsite&from=nav.



https://www.youtube.com/watch?v=FEHXTrECkAQ.

90.    The '112 Infringing Instrumentalities display the guidance information for locating the second scene:



http://www.dji.com/inspire-2?site=brandsite&from=nav.

91.     The DJI Defendants have thus infringed and continue to infringe at least claim 12 of the '112 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '112 Infringing Instrumentalities, and operating such that all steps of at least claim 12 are performed, including within this District.

92.     The users, customers, agents and/or other third parties of the '112 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 12 of the '112 patent by using the '112 Infringing Instrumentalities.

93.     The DJI Defendants have, since at least no later than October 4, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '112 Infringing Instrumentalities directly infringe the '112 patent.

94.     The DJI Defendants' knowledge of the '112 patent, which covers operating the '112 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 12 of the '112 patent are met, made it known to the DJI Defendants that the third-party infringers' use of the '112 Infringing Instrumentalities would directly infringe the '112 patent, or, at the very least, render the DJI Defendants willfully blind to such infringement.

95.     Having known or been willfully blind to the fact that the third-party infringers' use of the '112 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 12 of the '112 patent would directly infringe the '112 patent, the DJI Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '112 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '112 Infringing Instrumentalities, and by, for example, marketing '112 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '112 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '112 Infringing Instrumentalities. *See*,

COMPLAINT FOR PATENT INFRINGEMENT

*e.g.*,

https://dl.djicdn.com/downloads/inspire_2/20170711/INSPIRE_2_UM_V1.4_EN.pdf.

96.     The DJI Defendants induce the third-party infringers to infringe at least claim 12 of the '112 patent by directing or encouraging them to operate the '112 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 12 of the '112 patent.  For example, the DJI Defendants advertise and promote the features of the '112 Infringing Instrumentalities on https://www.dji.com and encourage the third-party infringers to operate the '112 Infringing Instrumentalities in an infringing manner. The DJI Defendants further provide technical assistance as to how the '112 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, https://dl.djicdn.com/downloads/inspire_2/20170711/INSPIRE_2_UM_V1.4_EN.pdf).  In response, the third-party infringers acquire and operate the '112 Infringing Instrumentalities such that all limitations of claim 12 of the '112 patent are practiced.

97.     Thus, the DJI Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 12 of the '112 patent, and the DJI Defendants have known of or been willfully blind to such infringement.  The DJI Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '112 Infringing Instrumentalities.

98.     Based on, among other things, the foregoing facts, the DJI Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 12 of the '112 patent.

99.     Further, the DJI Defendants sell, provide and/or license to the third-party infringers '112 Infringing Instrumentalities that are especially made and

COMPLAINT FOR PATENT INFRINGEMENT

adapted—and specifically intended by the DJI Defendants—to be used as components and material parts of the inventions covered by the '112 patent.  For example, the DJI Defendants provide the Inspire 2 which the third-party infringers use in a manner such that all limitations of at least claim 12 of the '112 patent are met, and without which the third party infringers would be unable to use and avail themselves of the '112 Infringing Instrumentalities in their intended manner.

100.   Upon information and belief, the DJI Defendants also knew that the '112 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 12 of the '112 patent.

101.   The Intelligent Flight technology in the '112 Infringing Instrumentalities is specially made and adapted to infringe at least claim 12 of the '112 patent.  Upon information and belief, the Intelligent Flight technology in the '112 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '112 Infringing Instrumentalities solely in a manner that is covered by the '112 patent, it does not have a substantial non-infringing use.  At least by no later than October 4, 2017, based on the foregoing facts, the DJI Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '112 Infringing Instrumentalities in a manner that is covered by the '112 patent.

102.   Based on, among other things, the foregoing facts, the DJI Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 12 of the '112 patent under 35 U.S.C. § 271(c).

103.   The DJI Defendants' acts of infringement of the '112 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least October 4, 2017, the DJI Defendants have willfully infringed the '112 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '112 patent, the DJI

Defendants have made the business decision to "efficiently infringe" the '112 patent. In doing so, the DJI Defendants willfully infringe the '112 patent.

104.    The DJI Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the DJI Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 5:  INFRINGEMENT OF THE '674 PATENT

105.    The allegations of paragraphs 1-104 of this Complaint are incorporated by reference as though fully set forth herein.

106.    MPV owns by assignment the entire right, title, and interest in the '674 patent.

107.    The '674 patent was issued by the United States Patent and Trademark Office on June 10, 2014 and is titled "Remotely Controllable Digital Camera System."  A true and correct copy of the '674 patent is attached as Exhibit E.

108.    Upon information and belief, the DJI Defendants have directly infringed at least claim 20 of the '674 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their CrystalSky monitor and compatible drones with imaging units (e.g., Phantom 3 Professional) ("the '674 Infringing Instrumentalities") in an exemplary manner as described below.

109.    One or more of the '674 Infringing Instrumentalities meet all the limitations of claim 20 of the '674 patent.  In particular, the '674 Infringing Instrumentalities capture a digital video signal using an image sensor:

COMPLAINT FOR PATENT INFRINGEMENT



http://www.dji.com/phantom-3-pro/camera#sub-feature.

110.   The '674 Infringing Instrumentalities form an image of a scene onto the image sensor:

# Camera and Gimbal

## Camera Profile

The on-board camera uses the 1/2.3 inch CMOS sensor to capture video (up to 4096x2160p at 24fps or 4K at up to 30fps with the Phantom 3 Professional) and 12 megapixel stills. You may choose to record the video in either MOV or MP4 format. Available picture shooting modes include burst, continuous, and time-lapse mode. A live preview of what the camera sees can be monitored on the connected mobile device via the DJI GO app.

https://dl.djicdn.com/downloads/phantom_3/en/Phantom+3+Professional+User+Manual+v1.8_en_20160719.pdf.

111.   The '674 Infringing Instrumentalities wirelessly receive a digital video signal from the image recording unit:

1
2
3
4
5
6
7
8
9



http://www.dji.com/crystalsky.

10
11
12

112.   The '674 Infringing Instrumentalities wirelessly receive a wireless communication from a second wireless communication system onboard the DJI image recording unit:

13
14
15
16
17
18
19
20
21



http://www.dji.com/crystalsky.

22
23
24
25
26
27
28

113.   The '674 Infringing Instrumentalities display the received digital video signal on an image display:

COMPLAINT FOR PATENT INFRINGEMENT



http://www.dji.com/crystalsky.

114. The '674 Infringing Instrumentalities detect an orientation of the image recording unit using an orientation sensor:



http://www.dji.com/phantom-3-pro/camera#sub-feature.

115. The '674 Infringing Instrumentalities enable a user to customize control of the imaging unit:

COMPLAINT FOR PATENT INFRINGEMENT



http://dl.djicdn.com/downloads/CrystalSky/20170424_1/Crystalsky_User_Guide_v1.0_multi.pdf.



http://www.dji.com/crystalsky.

116.    The '674 Infringing Instrumentalities allow a user to select a gimbal operation mode that will adjust the pointing direction of the optical system in response to detecting a change in the orientation of the image recording unit:



https://dl.djicdn.com/downloads/phantom_3/en/Phantom+3+Professional+User+Manual+v1.8_en_20160719.pdf.

117.    The '674 Infringing Instrumentalities store the received digital video signal in a digital media file:



http://www.dji.com/crystalsky.

118.    The DJI Defendants have thus infringed and continue to infringe at least claim 20 of the '674 patent by making, using, testing, selling, offering for sale,

COMPLAINT FOR PATENT INFRINGEMENT

importing and/or licensing the '674 Infringing Instrumentalities, and operating such that all steps of at least claim 20 are performed, including within this District.

119.    The users, customers, agents and/or other third parties of the '674 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 20 of the '674 patent by using the '674 Infringing Instrumentalities.

120.    The DJI Defendants have, since at least no later than October 4, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '674 Infringing Instrumentalities directly infringe the '674 patent.

121.    The DJI Defendants' knowledge of the '674 patent, which covers operating the '674 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 20 of the '674 patent are met, made it known to the DJI Defendants that the third party infringers' use of the '674 Infringing Instrumentalities would directly infringe the '674 patent, or, at the very least, render the DJI Defendants willfully blind to such infringement.

122.    Having known or been willfully blind to the fact that the third-party infringers' use of the '674 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 20 of the '674 patent would directly infringe the '674 patent, the DJI Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '674  patent by making, using, testing, selling, offering for sale, importing and/or licensing said '674 Infringing Instrumentalities, and by, for example, marketing '674 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '674 Infringing Instrumentalities; and providing technical assistance to the third party infringers during their continued use of the '674 Infringing Instrumentalities.  *See*, *e.g.*,

https://dl.djicdn.com/downloads/phantom_3/en/Phantom+3+Professional+User+Ma

COMPLAINT FOR PATENT INFRINGEMENT

1   nual+v1.8_en_20160719.pdf.

2        123.   The DJI Defendants induce the third-party infringers to infringe at

3   least claim 20 of the '674 patent by directing or encouraging them to operate the

4   '674 Infringing Instrumentalities which, alone or in combination with the third-

5   party infringers' devices, satisfy all limitations of claim 20 of the '674 patent.  For

6   example, the DJI Defendants advertise and promote the features of the '674

7   Infringing Instrumentalities on www.dji.com and encourage the third-party

8   infringers to operate the '674 Infringing Instrumentalities in an infringing manner.

9   The DJI Defendants further provide technical assistance as to how the '674

10   Infringing Instrumentalities should be used by the third party infringers (*see*, *e.g.*,

11   https://dl.djicdn.com/downloads/phantom_3/en/Phantom+3+Professional+User+Ma

12   nual+v1.8_en_20160719.pdf).  In response, the third-party infringers acquire and

13   operate the '674 Infringing Instrumentalities such that all limitations of claim 20 of

14   the '674 patent are practiced.

15        124.   Thus, the DJI Defendants have specifically intended to induce, and

16   have induced, the third-party infringers to infringe at least claim 20 of the '674

17   patent, and the DJI Defendants have known of or been willfully blind to such

18   infringement.  The DJI Defendants have advised, encouraged, and/or aided the

19   third-party infringers to engage in direct infringement, including through their

20   encouragement, advice, and assistance to the third-party infringers to use the '674

21   Infringing Instrumentalities.

22        125.   Based on, among other things, the foregoing facts, the DJI Defendants

23   have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at

24   least claim 20 of the '674 patent.

25        126.   Further, the DJI Defendants sell, provide and/or license to the third-

26   party infringers '674 Infringing Instrumentalities that are especially made and

27   adapted—and specifically intended by the DJI Defendants—to be used as

28   components and material parts of the inventions covered by the '674 patent.  For

example, the DJI Defendants provide CrystalSky monitor and compatible drones with imaging units (e.g., Phantom 3 Professional) which the third-party infringers use in a manner that all limitations of at least claim 20 of the '674 patent are met, and without which the third party infringers would be unable to use and avail themselves of the '674 Infringing Instrumentalities in their intended manner.

127.   Upon information and belief, the DJI Defendants also knew that the '674 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 20 of the '674 patent.

128.   The CrystalSky technology in the '674 Infringing Instrumentalities is specially made and adapted to infringe at least claim 20 of the '674 patent.  Upon information and belief, the CrystalSky technology in the '674 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '674 Infringing Instrumentalities solely in a manner that is covered by the '674 patent, it does not have a substantial non-infringing use.  At least by no later than October 4, 2017, based on the foregoing facts, the DJI Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '674 Infringing Instrumentalities in a manner that is covered by the '674 patent.

129.   Based on, among other things, the foregoing facts, the DJI Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 20 of the '674 patent under 35 U.S.C. § 271(c).

130.   The DJI Defendants' acts of infringement of the '674 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least October 4, 2017, the DJI Defendants have willfully infringed the '674 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '674 patent, the DJI Defendants have made the business decision to "efficiently infringe" the '674 patent.  In doing so, the DJI Defendants willfully infringe the '674 patent.

131.   The DJI Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the DJI Defendants' wrongful acts in an amount subject to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, MPV respectfully requests the following relief:

A.   A judgment that the DJI Defendants have willfully infringed the '317 patent;

B.   A judgment that DJI Defendants have willfully infringed the '485 patent;

C.   A judgment that DJI Defendants have willfully infringed the '713 patent;

D.   A judgment that DJI Defendants have willfully infringed the '112 patent;

E.   A judgment that DJI Defendants have willfully infringed the '674 patent;

F.   A judgment that MPV be awarded damages adequate to compensate it for DJI Defendants' past infringement and any continuing or future infringement of the '317 patent, the '485 patent, the '713 patent, the '112 patent, and the '674 patent, including pre-judgment and post-judgment interest costs and disbursements as justified under 35 U.S.C. § 284 and an accounting;

G.   That this be determined to be an exceptional case under 35 U.S.C. § 285 and that MPV be awarded enhanced damages up to treble damages for willful infringement as provided by 35 U.S.C. § 284;

H.   That MPV be granted its reasonable attorneys' fees in this action;

I.   That this Court award MPV its costs; and

J.   That this Court award MPV such other and further relief as the Court deems proper.

COMPLAINT FOR PATENT INFRINGEMENT

1

## **DEMAND FOR JURY TRIAL**

2
        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MPV

3
demands a trial by jury for all issues so triable.

4

5
Dated: March 16, 2018        By  */s/ Marc Belloli*
                                    Marc Belloli (SBN 244290)

6                                   mbelloli@feinday.com
                                    FEINBERG DAY ALBERTI LIM & BELLOLI

7                                   LLP

8                                   1600 El Camino Real, Suite 280
                                    Menlo Park, CA  94025

9                                   Telephone:      650 618-4360
                                    Facsimile:      650 618-4368

10

11                                  *Attorneys for Plaintiff*
                                    Monument Peak Ventures, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT