1   BRYAN WILSON (CA SBN 138842)
    BWilson@mofo.com
2   YUE LI (CA SBN 287280)
    YLi@mofo.com
3   JACKIE CHENG (CA SBN 307372)
    jcheng@mofo.com
4   MORRISON & FOERSTER LLP
    755 Page Mill Road
5   Palo Alto, California  94304-1018
    Telephone: 650.813.5600
6   Facsimile: 650.494.0792

7   HECTOR G. GALLEGOS (CA SBN 175137)
    HGallegos@mofo.com
8   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
9   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
10  Facsimile: 213.892.5454

11  Attorneys for Defendant
    DJI TECHNOLOGY, INC.

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

| 16 | MONUMENT PEAK VENTURES, LLC, | Case No. 2:18-cv-02210-RGK-AGR |
|---|---|---|
| 17 | Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DJI** |
| 18 | v. | **TECHNOLOGY, INC.'S MOTION TO DISMISS UNDER** |
| 19 | SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., and | **RULE 12(b)(6)** |
| 20 | DJI TECHNOLOGY, INC., | Date:  June 25, 2018 Time:  9:00 a.m. |
| 21 | Defendants. | Courtroom:  850, 8th Floor Judge:  Hon. R. Gary Klausner |
| 22 | | |
| 23 | | Complaint Filed:  March 16, 2018 Trial Date:  None Set |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    THE ASSERTED PATENTS AND CLAIMS .................................................... 1

    A.    U.S. Patent No. 8,675,112 (the "'112 Patent") .................................... 1

    B.    U.S. Patent No. 6,282,317 (the "'317 Patent") .................................... 2

    C.    U.S. Patent Nos. 6,781,713 (the "'713 Patent") and 6,760,485
        (the "'485 Patent") ................................................................................ 3

II.   LEGAL STANDARD ................................................................................... 3

    A.    Patent Eligibility Under § 101 ............................................................ 3

        1.    *Alice* Step One: Abstract Idea .................................................. 4

        2.    *Alice* Step Two: Inventive Concept ......................................... 4

    B.    The Federal Circuit Has Repeatedly Affirmed § 101 Rejections
        at the Motion to Dismiss Stage ........................................................... 5

III.  CLAIM 12 OF THE '112 PATENT IS INVALID UNDER § 101 ................ 5

    A.    Claim 12 of the '112 Patent Is Directed to an Abstract Idea of
        Acquiring, Analyzing and Displaying Information ............................. 5

        1.    Acquiring, analyzing, and/or displaying information is an
            abstract idea. ............................................................................. 6

        2.    Claim 12 recites results rather than any specific technical
            solutions. ................................................................................... 7

        3.    Claim 12 recites activities performed by humans. .................... 8

    B.    Claim 12 of the '112 Patent Recites No Inventive Concept ............... 9

        1.    Claim 12 requires nothing more than a generic computer
            implementation of an abstract idea. .......................................... 9

        2.    The specification confirms no "inventive concept." ................ 10

IV.   CLAIM 1 OF THE '317 PATENT IS INVALID UNDER § 101 ................ 11

    A.    Claim 1 Is Directed to an Abstract Idea of Detecting a Subject in
        an Image by Acquiring / Analyzing Information ............................... 12

        1.    Acquiring / analyzing information is an abstract idea. ............. 12

        2.    Claim 1 recites a fundamental process that humans use in
            everyday life. ........................................................................... 13

        3.    Claim 1 recites functional results rather than any specific
            technical solutions. .................................................................. 14

    B.    Claim 1 Recites No Inventive Concept .............................................. 15

        1.    Claim 1 requires nothing more than a generic computer
            implementation of an abstract idea. ......................................... 15

        2.    The specification confirms no inventive concept. ................... 16

**TABLE OF CONTENTS**
**(continued)**

Page

V.    CLAIM 25 OF THE '713 Patent AND CLAIM 21 OF The '485
      PATENT ARE INVALID UNDER § 101 ..................................................... 17

      A.    The Claims Are Directed to an Abstract Idea of Processing an
            Image Using a Mathematical Formula............................................ 17

            1.    Manipulating information using mathematical formulas is
                  an abstract idea. ........................................................................ 17

            2.    The asserted claims recite results rather than any specific
                  technical solutions. .................................................................. 18

      B.    The Claims Recite No Inventive Concept ........................................... 19

            1.    The asserted claims require nothing more than a generic
                  computer implementation of an abstract idea........................... 19

            2.    The specifications confirm no inventive concept. .................... 19

VI.   CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ...................................................... 5

*Accenture Glob. Servs. v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ...................................................... 17

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ............................................... 7, 15, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ........................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) ........................................... 4, 7, 10, 11

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  No. 2017-1494, 2018 U.S. App. LEXIS 3779
  (Fed. Cir. Feb. 16, 2018) ........................................................... 5

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ...................................................... 4

*Blue Spike, LLC v. Google Inc.*,
  No. 14-cv-01650-YGR, 2015 U.S. Dist. LEXIS 119382
  (N.D. Cal. Sep. 8, 2015) ...................................................... 13, 14, 16

*Cleveland Clinic Found. v. True Health Diags. LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ...................................................... 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................. 8, 13

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) ...................................................... 9

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ................................................. *passim*

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Electric Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................ 8, 14, 15

*FairWarning IP, LLC v. Iatric Sys. Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ............................................. 6, 12, 15, 17

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ........................................................................... 18

*I/P Engine, Inc. v. AOL Inc.*,
    576 F. App'x 982 (Fed. Cir. 2014) .................................................... 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................. 5, 9, 10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ..................................................... 10

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .................................................... 4, 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*
    837 F.3d 1299 (Fed. Cir. 2016) ............................................. 8, 15, 18

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ....................................................... 8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) .................................................. 16, 20

*P&G v. QuantifiCare Inc.*,
    288 F. Supp. 3d 1002 (N.D. Cal. 2017) ......................................... 7, 11

*Parker v. Flook*,
    437 U.S. 584 (1978) ............................................................. 18, 19, 20

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ................................................ 16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Purepredictive, Inc. v. H20.AI, Inc.*,
   No. 17-cv-03049-WHO, 2017 U.S. Dist. LEXIS 139056
   (N.D. Cal. Aug. 29, 2017) .......................................................... 13, 18

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) .......................................................*passim*

*SAP Am., Inc. v. InvestPic, LLC*,
   260 F. Supp. 3d 705 (N.D. Tex. 2017) .................................................. 16

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017) .............................................................. 4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ...................................................... 13, 19

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ...........................................6, 9, 12, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ..................................................... 4, 7, 15

**Statutes**

35 U.S.C. § 101...................................................................................*passim*

Defendant DJI Technology, Inc. ("DJI")[1] moves to dismiss Plaintiff Monument Peak Ventures, LLC's ("MPV") Complaint as to U.S. Patent Nos. 8,675,112; 6,282,317; 6,760,485; and 6,781,713 for failure to state a claim on the grounds that the asserted claims[2] are ineligible under 35 U.S.C. § 101.

DJI is the industry leader in the recreational drone market.  The patents are asserted against photography-related features associated with DJI's products, although some of the features are actually provided by third-party software.  DJI does not infringe the patents for a host of reasons, which will be litigated if necessary.  As discussed in this motion, that should not be necessary.

MPV's asserted claims are directed to image processing by acquiring, analyzing, or displaying information—precisely the type of abstract ideas that the Federal Circuit has found unpatentable.  Further, MPV's asserted claims do not recite any inventive concept necessary to transform their abstract ideas into patent-eligible subject matter.  Instead, MPV's asserted claims simply recite results disembodied from any specific technical solutions for achieving the desired results. They require nothing more than generic computer implementation to perform the abstract ideas.  MPV's asserted claims are ineligible under Section 101.

## I.      THE ASSERTED PATENTS AND CLAIMS

### A.      U.S. Patent No. 8,675,112 (the "'112 Patent")

The '112 patent "relates to image capture devices which provide guidance for capturing images at different locations."  ('112 patent at 1:31-33.)  The asserted claim 12 recites a method comprising:

- "displaying, on an image display of a computing device, guidance information for capturing a first digital image at a location of a first

---

[1] SZ DJI Technology Co., Ltd. and DJI Europe B.V. have not been served.

[2] This motion addresses the claims that are asserted in MPV's Complaint.  (ECF No. 1.)  To the extent that MPV later attempts to assert additional claims, it is appropriate to treat the currently asserted claims as representative claims.

scene";

- "capturing, by the computing device, the first digital image of the first scene using the guidance information";

- "analyzing, by the computing device, pixel data of the first digital image to determine a location of a second scene and guidance information for locating the second scene, wherein the location of the second scene is selected from a plurality of possible locations, and wherein the location of the second scene is different from the location of the first scene; and"

- "displaying, by the computing device, the guidance information for locating the second scene."

Claim 12 merely recites a generic "computing device" having an "image display" for performing the claimed steps. The specification describes that the purported invention analyzes pixel data of an image using well-known and conventional image recognition algorithms. (*Id*. at 5:65-6:26.)

### B.   U.S. Patent No. 6,282,317 (the "'317 Patent")

The '317 patent "relates generally to the field of digital image processing and, more particularly, to locating main subjects" in a digital image. ('317 patent at 1:6-9.) "[A]n object of this invention [is] to provide a method of finding main subjects in an image **in an automatic manner**." (*Id*. at 4:8-9 (emphasis added).)

The asserted claim 1 recites the following steps to detect a main subject:

- "a) receiving a digital image";

- "b) extracting regions of arbitrary shape and size defined by actual objects from the digital image";

- "c) extracting for each of the regions at least one structural saliency feature and at least one semantic saliency feature; and"

- "d) integrating the structural saliency feature and the semantic feature using a probabilistic reasoning engine into an estimate of a belief that each region is the main subject."

The specification describes "structural saliency features" as low-level early

vision features (color, brightness, and texture) and geometric features (location, spatial relationship, size, shape, and symmetry).  (*Id*. at 6:26-28; 6:51-55.) "Semantic saliency features" include people and "key background subject matters" that "frequently appear in photographic images," such as flesh, face, sky, and grass. (*Id*. at 13:35-42; 6:30-33; 6:55-56.)  The specification acknowledges that the human brain performs main subject detection by using these structural and semantic saliency features.  (*Id*. at 2:50-58; 6:43-50.)

### C.   U.S. Patent Nos. 6,781,713 (the "'713 Patent") and 6,760,485 (the "'485 Patent")

The '713 and '485 patents both relate to "a method for correcting for exposure in rendered digital images captured by a digital camera" and share substantially the same specification.  ('713 patent at 1:22-25; '485 patent at 1:21-24.)  Claim 25 of the '713 patent recites a "method for processing an image":

- "allowing a single user adjustable exposure setting to be changed";

- "selecting an exposure modification transform responsive to changes in the exposure setting which transform accounts for a rendering used to produce the rendered digital image and which appears as if a different exposure level was used by the image capture device";

- "using the selected transform to transform the image; and

- "displaying the transformed image as the exposure setting is changed."

Claim 21 of the '485 patent recites a substantially similar process without the last "displaying" step.  Both claims fail to recite any tangible components to perform the recited steps.  Moreover, the "Background of the Invention" acknowledges that conventional software such as Adobe Photoshop allowed a user to adjust exposure by inputting a modification curve in a "lookup table" and that "a skilled user is able to determine what curve shape provides the best image[.]"  ('713 patent at 1:53-57; '485 patent at 1:57-61.)

## II.   LEGAL STANDARD

### A.   Patent Eligibility Under § 101

1    The Supreme Court has adopted a two-step framework for determining

2    whether a claim is patent-ineligible under § 101: (1) whether the claims are directed

3    to one of the three patent-ineligible categories, *i.e.*, laws of nature, natural

4    phenomena, or an abstract idea; and (2) whether any claim elements provide an

5    "inventive concept" that transforms the claim into patent-eligible subject matter.

6    *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

### 1.    *Alice* Step One: Abstract Idea

8    The first step in *Alice* looks at the "focus" of the claims and their "character

9    as a whole" to determine whether the claims are directed to an abstract idea.

10   *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

11   For computer-based claims, the Federal Circuit has examined whether the

12   claims focus on a "specific means or method that improves the relevant

13   technology," which may pass muster under § 101, or on a "result or effect that itself

14   is the abstract idea and merely invoke generic processes and machinery," which

15   cannot.  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016)

16   (internal quotation and citation omitted); *Two-Way Media Ltd. v. Comcast Cable*

17   *Commc'ns LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  Courts also consider if all

18   of the steps of the claim could be performed by human beings in a non-

19   computerized "brick and mortar" context.  *See, e.g.*, *Intellectual Ventures I LLC v.*

20   *Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016).

### 2.    *Alice* Step Two: Inventive Concept

22   The second inquiry under *Alice* "determine[s] whether the claim elements,

23   when viewed individually and as an ordered combination, contain an inventive

24   concept sufficient to transform the claimed abstract idea into a patent-eligible

25   application."  *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d

26   1364, 1373–74 (Fed. Cir. 2017).  "To save a patent at step two, an inventive

27   concept must be evident in the claims."  *Two-Way Media*, 784 F.3d at 1338;

28   *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (holding that certain

claims did not recite an inventive concept because they failed to "recite any of the purportedly unconventional activities disclosed in the specification").

The Supreme Court has held that "generic computer implementation" is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2352, 2357. Such "generic computer implementation" includes "computer functions [that] are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* at 2359. "[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

## B.   The Federal Circuit Has Repeatedly Affirmed § 101 Rejections at the Motion to Dismiss Stage

Patent eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diags. LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also Automated Tracking Sols., LLC v. Coca-Cola Co.*, No. 2017-1494, 2018 U.S. App. LEXIS 3779, at *14 (Fed. Cir. Feb. 16, 2018) (affirming district court's judgment of patent ineligibility on the pleadings). Early resolution of the § 101 issue can "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring) (discussing "clear advantages to addressing section 101's requirements at the outset of litigation").

## III.   CLAIM 12 OF THE '112 PATENT IS INVALID UNDER § 101

### A.   Claim 12 of the '112 Patent Is Directed to an Abstract Idea of Acquiring, Analyzing and Displaying Information

### 1. Acquiring, analyzing, and/or displaying information is an abstract idea.

Claim 12 recites "**capturing** . . . the first digital image of the first scene," "**analyzing** . . . pixel data of the first digital image to determine a location of a second scene and guidance information for locating the second scene," and "**displaying** . . . the guidance information." (emphasis added.) Thus, claim 12 is directed to precisely the type of abstract ideas that the Federal Circuit has repeatedly found unpatentable—acquiring, analyzing, and displaying information. *Electric Power*, 830 F.3d at 1353-54 ("a process of gathering and analyzing information of a specified content, then displaying the results" is an abstract idea); *FairWarning IP, LLC v. Iatric Sys. Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016) (finding "collecting and analyzing information to detect misuse and notifying a user when misuse is detected" directed to an abstract idea).  Here, claim 12 is even less descriptive than the claims found abstract in *FairWarning* and *Electric Power*.  For example, in *FairWarning,* the claims enumerated fraud detection rules.  In contrast, claim 12 recites the steps of "capturing," "analyzing," and "displaying" without defining any rules or providing any means of how to accomplish those steps.

Moreover, courts have consistently concluded that claims reciting analyzing or manipulating data in the realm of image processing are directed to abstract ideas. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (holding the claims were "directed to the abstract idea of classifying and storing digital images in an organized manner"); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1347, 1350 (Fed. Cir. 2014) (holding "digital image processing" claims were directed to "an abstract idea because [they described] a process of organizing information through mathematical correlations and [were] not tied to a specific structure or machine."); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (holding a claim reciting "a method whereby a user displays images on a first display, assigns image codes to the images through

an interface using a mathematical formula, and then reproduces the image based on the codes" was an abstract idea); *P&G v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1019 (N.D. Cal. 2017) ("Acquiring a digital image of a person is mere data collection.  Analyzing that digital image to locate and quantify the skin defects is simple analysis of that information.").

### 2.    Claim 12 recites results rather than any specific technical solutions.

The claimed functional results of "displaying," "capturing," and "analyzing"—untethered to any specific ways of achieving them—further underscores the abstractness of claim 12.  Such a result-focused claim is directed to an abstract idea because it does "no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution."  *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *Two-Way Media*, 874 F.3d at 1337-38 ("The claim . . . does not sufficiently describe how to achieve [the claimed functional] results in a non-abstract way."); *Electric Power*, 830 F.3d at 1351 ("The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101."); *Apple*, 842 F.3d at 1241 ("[The patents] do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems.").

Here, for example, claim 12 recites a result of providing "guidance information for locating [a] second scene" by "analyzing…pixel data of an image of the first scene."  But the claim does not recite *how* pixel data is analyzed.  *See, e.g.*, *P&G*, 288 F. Supp. 3d at 1022-23 ("The claim does not indicate or provide details about how to carry out the analysis to locate the defects or enumerate their severity; claim [] simply describes the 'effect or result,' not the 'specific means or method' of producing the desired result.").

In contrast, claims that have been upheld under § 101 have all provided a

1   specific technical solution—something claim 12 fails to do.  For example, in

2   *Enfish, LLC v. Microsoft Corp.*, the claims disclosed a specific "self-referential"

3   data structure to accomplish their claimed improvement to computer databases.

4   822 F.3d 1327, 1336-37 (Fed. Cir. 2016).  In *McRO, Inc. v. Bandai Namco Games*

5   *Am. Inc.*, the claims disclosed a specific set of rules "defin[ing] morph weight sets

6   as a function of the timing of phoneme sub-sequences" to improve three-

7   dimensional computer animation.  837 F.3d 1299, 1313 (Fed. Cir. 2016).  Claim 12

8   of the '112 patent, however, does not include anything that relates to *how* to

9   perform the claimed steps.  Instead, it simply claims the desired results.

10              **3.      Claim 12 recites activities performed by humans.**

11          Functions that "could all be performed by humans without a computer" are

12   abstract.  *See, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d

13   1314, 1324 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells*

14   *Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding that the abstract

15   concepts of "data collection, recognition, and storage" were "undisputedly well-

16   known" and "humans have always performed these functions").  Here, but for the

17   recitation of generic computer components, *i.e.*, a "computing device" having an

18   "image display," claim 12 recites an abstract idea that has been performed by

19   humans.  *See Symantec*, 838 F.3d at 1318 ("[T]here is nothing in the claims

20   themselves that foreclose them from being performed by a human[.]").

21          Specifically, humans can write down "guidance information" for "capturing"

22   an image "at a location of a first scene" using pen and paper.  Humans can

23   "captur[e]" the image by taking a photograph or drawing a picture at "the first

24   scene."  Humans can also "analyze" "pixel data of the . . . image to determine a

25   location of a second scene and guidance information for locating the second scene."

26   For example, humans can look at the image to "determine how many people are

27   depicted in the first digital image, to determine the approximate age of at least one

28   person depicted in the first digital image, or to determine at least one landmark

depicted in the first digital image" and to determine a suitable location for a "second scene" to capture another image. ('317 patent at 15:20-26.) Finally, humans can write down "guidance information" for "locating the second scene" using pen and paper. Thus, all the claimed steps can be performed by humans.

Nothing distinguishes the claimed method from such a basic human activity other than the recitation of a general-purpose "computing device" for automating the claimed steps. ('112 patent at 15:56-61.) However, "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

### B.   Claim 12 of the '112 Patent Recites No Inventive Concept

#### 1.   Claim 12 requires nothing more than a generic computer implementation of an abstract idea.

"To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327. Merely using generic computer components or routine computer functions to implement an abstract idea is insufficient to supply an inventive concept. *See Capital One*, 792 F.3d at 1368 ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible."); *Electric Power*, 830 F.3d at 1355-56 ("[I]nvocations of computers and networks that are not even arguably inventive are 'insufficient.'"); *TLI*, 823 F.3d at 611-13 (holding the recitation of a "telephone unit," a "server", an "image analysis unit," and a "control unit" failed to add an inventive concept).

The elements of claim 12, whether viewed individually or as an ordered combination, fail to recite any inventive concept that transforms the abstract idea into a concrete, patent-eligible invention. The *only* tangible device recited in the claim is a generic "computing device" having an "image display" to perform its standard, conventional functions to implement the claimed abstract idea. It is the

1   type of "off-the-shelf, conventional computer, network, and display technology"

2   that is "not even arguably inventive." *Electric Power*, 830 F.3d at 1355.  The claim

3   merely recites a trivial series of steps that can be performed by a human and "say

4   'do it on a computer.'"  *Apple*, 842 F.3d at 1243 (citing *Alice*, 134 S. Ct. at 2358).

5       Moreover, the claim recites only a functional aspiration that the "computing

6   device," somehow through some unspecified processes, analyzes "pixel data" to

7   determine the guidance information.  It does not disclose any special or improved

8   way of acquiring or analyzing data, and no specific devices are required to perform

9   those tasks.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d

10  1332, 1342 (Fed. Cir. 2017) ("[T]he recited limitations neither improve the

11  functions of the computer itself, nor provide specific programming, tailored

12  software, or meaningful guidance for implementing the abstract concept.").

13          **2.    The specification confirms no "inventive concept."**

14      The specification further confirms that the purported invention has no

15  "inventive concept."  It describes "[a]n image capture device, comprising an image

16  sensor, an image display, [and] a data processing system[.]"  ('112 patent at

17  Abstract.)  The specification admits that the "capture devices and imaging systems

18  **<u>will be familiar to one skilled in the art</u>**."  (*Id*. at 4:37-38 (emphasis added).)

19  Indeed, the specification describes using a generic "image display" such as "LCD"

20  for displaying guidance information (*id*. at Abstract; 10:3-8), a generic "image

21  sensor" for capturing an image (*id*. at Abstract; 9:6-15), and a generic "processor"

22  for analyzing pixel data to determine guidance information (*id*. at Abstract; 5:65-

23  6:26; 10:55-63; 11:46-50).  Any suggestion that the claim passes muster under

24  *Alice* because it purports to "automatically" or "efficiently" provide guidance for

25  capturing images must fail.  *See Capital One Bank*, 792 F.3d at 1367 ("[C]laiming

26  the improved speed or efficiency inherent with applying the abstract idea on a

27  computer [does not] provide a sufficient inventive concept.").

28      The specification also makes clear that the software and algorithms used to

implement the purported invention are "**conventional**" and "**well known**."  (*See, e.g.*, '112 patent at 3:50-51 ("[I]mage manipulation algorithms and systems are well known.); 4:34-36 ("[S]oftware not specifically shown, described or suggested herein that is useful for implementation of the invention is conventional."); 4:29-30 ("Elements not specifically shown or described herein are selected from those known in the art.").)  Notably, the specification admits that the purported invention uses a variety of known detection algorithms to analyze the pixel data to determine guidance information.  (*Id.* at 6:2-5 ("[T]he processor 292 can analyze the pixel data in order to detect faces in one or more customer images **using a variety of known face detection algorithms.**") (emphasis added); 6:20-26 ("Such image recognition algorithms are used, for example, in the Google Goggles Application (APP) for the Android mobile platform, which is available from Google[.]").)  *See P&G*, 288 F. Supp. 3d at 1027 (finding no inventive steps where the claimed steps proceed "in a known manner," "using a variety of known algorithms," and use methods "well known to persons of ordinary skill in the art").

The purported invention is similar to those found ineligible in *Apple*.  In *Apple*, the Federal Circuit held that "the use of existing handwriting and voice capture technologies" to generate menus could not supply an "inventive concept" because the patentee "had not invented voice or handwriting capture technolog[ies]" and it was "known" to use those technologies.  842 F.3d at 1245.  Likewise, here, the specification simply leaves it up to others to choose any of the existing "image analysis techniques" for the claimed steps, which is insufficient to supply an inventive concept.  ('112 patent at 11:48-57 ("The analysis uses one or more digital image analysis techniques . . . includ[ing], for example, semantic analysis, feature point identification, color map identification, facial identification, facial recognition, age recognition, and color or light balance analysis.").)

## IV.    CLAIM 1 OF THE '317 PATENT IS INVALID UNDER § 101

### A. Claim 1 Is Directed to an Abstract Idea of Detecting a Subject in an Image by Acquiring / Analyzing Information.

#### 1. Acquiring / analyzing information is an abstract idea.

The "focus" and "character" of claim 1 are directed to a process for detecting a subject in an image, which includes: "receiving" an image, "extracting" regions, "extracting" structural and semantic features from each region, and "integrating" the extracted features. Thus, claim 1 of the '317 patent falls squarely within the category of abstract ideas of acquiring information (the claimed "receiving" and "extracting" steps) and analyzing information (the claimed "integrating" step). *Electric Power*, 830 F.3d at 1353-54; *FairWarning*, 839 F.3d at 1094; *TLI*, 823 F.3d at 613; *Digitech*, 758 F.3d 1350-51; *RecogniCorp*, 855 F.3d at 1326.

Moreover, using a "probabilistic reasoning engine"—a mathematical calculation—to "integrat[e]" the structural and semantic features, does not make claim 1 less abstract. This is because adding one abstract idea (math) to another abstract idea (acquiring and analyzing data) does not render the claim non-abstract. *RecogniCorp*, 855 F.3d at 1327 (holding that the recitation of "multiplication operation," a mathematical formula, in a claim reciting an abstract idea of encoding and decoding image data does not render the claim non-abstract); *see also Digitech*, 758 F.3d at 1351 ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

Claim 1 of the '317 patent is similar to the claims found ineligible in *Digitech*. In *Digitech*, the claim recited a "method of generating a device profile that describes properties of a device in a digital image reproduction system," which comprises "generating" a first data set, "generating" a second data, and "combining" the first and second data sets into the device profile. 758 F.3d at 1351. "The two data sets are generated by taking existing information" and "organizing this information into a new form." *Id.* The Federal Circuit held that

the claim recited "an abstract idea because it describe[d] a process of organizing information through mathematical correlations and [was] not tied to a specific structure or machine." *Id*. at 1350.  Likewise, claim 1 recites "extracting" the structural and semantic saliency features and "integrating" them using a mathematical formula.  As in *Digitech*, "employ[ing] mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Id*. at 1351; *see also Purepredictive, Inc. v. H20.AI, Inc.*, No. 17-cv-03049-WHO, 2017 U.S. Dist. LEXIS 139056, at *13, 17 (N.D. Cal. Aug. 29, 2017) (finding "using mathematical algorithms to perform predictive analytics" recites "patent-ineligible concepts").

### 2.   Claim 1 recites a fundamental process that humans use in everyday life.

The recited steps replicate the same fundamental steps that humans use to detect a subject in an image in everyday life.  *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions.").  The Federal Circuit has "treated analyzing information by steps people go through [in] their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Electric Power*, 830 F.3d at 1354.  This is because "computational methods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016).

Indeed, the specification itself "emphasizes the goal of modeling human capacity" and admits that each step recited in claim 1 can be performed by humans. *Blue Spike, LLC v. Google Inc.*, No. 14-cv-01650-YGR, 2015 U.S. Dist. LEXIS 119382, at *14 (N.D. Cal. Sep. 8, 2015).  <u>First</u>, the specification states that humans can "receiv[e]" an image and "extract[]" different "regions" from the image as

claimed in steps a) and b).  ('317 patent at 2:50-58 (discussing "features known to influence human visual attention for each region of a segmented image to produce an importance value for each feature in each region.").)  Second, the specification acknowledges that the human brain "extract[s]" in each region (1) structural saliency features: "location," "size," "brightness," "colorfulness," "texturefulness," "shape," "symmetry," and "spatial relationship"; and (2) semantic saliency features such as "key subject matter," as claimed in step c).[3]  (Id.; see also id at 6:43-50.)  Third, the specification describes that the human brain detects a main subject by "integrating" structural and semantic saliency features based on probability, as claimed in step d).  (Id. at 2:50-58; id. at 6:39-50 ("The human brain . . . combines different subjective criteria in order to give an assessment of the interesting or primary subject(s) in a scene.").)  Like Blue Spike, claim 1 seeks to "'model,' on a computer, 'the highly effective ability of humans to identify and recognize a [main subject].'"  2015 U.S. Dist. LEXIS 119382, at *13-14 (finding claims directed to an abstract idea because the methods recited in the claims "mirror[ed] the manner in which the human mind undert[ook] the same task.").

### 3.   Claim 1 recites functional results rather than any specific technical solutions.

Courts have considered whether claims "purport to improve the functioning of the computer itself," Alice, 134 S. Ct. at 2359, which may pass muster under § 101, or instead whether "computers are invoked merely as a tool" to carry out an abstract process, Enfish, 822 F.3d at 1336.

Claim 1 simply automates a process used by humans using a computer as a tool.  Notably, the '317 patent is entitled "Method for Automatic Determination of Main Subjects in Photographic Images" and its objective is "to provide a method of

---

[3] The specification describes (1) "structural saliency features" as low-level early vision features (color, brightness, and texture) and geometric features (location, spatial relationship, size, shape and symmetry) and (2) "semantic saliency features" including people and "key background subject matters" that "frequently appear in photographic images," such as flesh, face, sky, and grass.  (See Section I.B.)

finding main subjects in an image in an automatic manner." ('317 patent at 4:8-9.) Using a computer to perform the recited steps more efficiently does not confer patentability. *FairWarning*, 839 F.3d at 1095.  In addition, analyzing information "by mathematical algorithms," such as using the "probabilistic reasoning engine," without more, recites "mental processes within the abstract-idea category." *See Electric Power*, 830 F.3d at 1353; *Digitech*, 758 F.3d at 1351.  Unlike *Enfish* and *McRO* where the claims were directed "to a specific improvement to the way computers operate," claim 1 does not recite any specific improvement of technology. *Enfish*, 822 F.3d at 1336; *McRO*, 837 F.3d at 1314-15.

The Federal Circuit has also declined to find that a case falls under the principles of *Enfish* and *McRO* when the claimed invention is "purely functional [in] nature" and merely recites the result or effect. *See, e.g., Affinity Labs*, 838 F.3d at 1269 (Fed. Cir. 2016).  Here, claim 1 merely recites the functional results of "receiving," "extracting," and "integrating" rather than any specific technical solution for achieving those results.  In particular, the claim does not provide details about how to extract the structural and semantic saliency features or how the "probabilistic reasoning engine" integrates the features to detect a main subject. Claim 1 simply describes the "effect or result," not the "specific means or method" of producing the result. *See Two-Way Media*, 874 F.3d at 1337; *RecogniCorp*, 855 F.3d at 1326; *Affinity Labs*, 838 F.3d at 1269.

## B.   Claim 1 Recites No Inventive Concept

### 1.   Claim 1 requires nothing more than a generic computer implementation of an abstract idea.

The elements of claim 1, viewed individually or as an ordered combination, fail to recite any inventive concept that transforms the abstract idea into a concrete, patent-eligible invention.  All of the recited functions—"receiving" an image, "extracting" regions, "extracting" features from each region, and "integrating" the extracted features—when performed electronically, are routine computer functions.

1   "[R]elying on a computer to perform routine tasks more quickly or more

2   accurately," such as "receiving," "extracting," and "integrating" data, is insufficient

3   to render a claim patent eligible." *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788

4   F.3d 1359, 1363 (Fed. Cir. 2015*); Blue Spike*, 2015 U.S. Dist. LEXIS 119382, at

5   *17 (finding the patents at issue lacked an inventive concept where "they merely

6   discuss[ed] using routine computer components and methods" to accomplish a task

7   with "greater efficiency than a human mind could achieve."); *Planet Bingo, LLC v.*

8   *VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (finding claims lacked an

9   "inventive concept" where the steps at issue could be "carried out in existing

10  computers long in use" and "done mentally").

11              **2.      The specification confirms no inventive concept.**

12         First, the specification admits that the claimed process can be implemented

13  on "any electronic processing system" to detect main subjects in an image "in an

14  automatic manner."  (*See* '317 patent at 5:43-51 ("[T]he present invention is not

15  limited to the computer system 10 shown, but may be used on any electronic

16  processing system."); *id*. at 4:8-9 ("[A]n object of this invention [is] to provide a

17  method of finding main subjects in an image in an automatic manner.").)

18         Second, the specification states that the "structural saliency features" and

19  "semantic saliency features" are "integrated [] using a reasoning engine based on a

20  Bayes net[.]"  (*Id*. at 6:35-36.)  As the specification admits, the Bayes net is a well-

21  known and conventional algorithm for probabilistic reasoning.  (*See id.* at 13:56-59

22  (citing to "A Bayes net (J. Pearl, *Probabilistic Reasoning in Intelligent Systems,*

23  San Francisco, Calif.: Morgan Kaufmann, 1988)").)  *See also SAP Am., Inc. v.*

24  *InvestPic, LLC*, 260 F. Supp. 3d 705, 712 (N.D. Tex. 2017) (finding no inventive

25  concept in claims reciting "Bayesian" statistical analysis).

26         Finally, any suggestion that the claim 1 recites an inventive concept because

27  the specification describes detailed algorithms for detecting a main subject in an

28  image must fail.  "[T]he complexity of the implementing software or the level of

detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("Although the specification of the [disputed] patent contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer."); *RecogniCorp*, 855 F.3d at 1327 (rejecting the argument that the "'particular encoding process using the specific algorithm disclosed' in the patent 'transforms' the abstract idea into a patentable invention."). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327.

## V.   CLAIM 25 OF THE '713 PATENT AND CLAIM 21 OF THE '485 PATENT ARE INVALID UNDER § 101

### A.   The Claims Are Directed to an Abstract Idea of Processing an Image Using a Mathematical Formula

#### 1.   Manipulating information using mathematical formulas is an abstract idea.

Claim 25 of the '713 patent and claim 21 of the '485 patent recite methods for adjusting exposure of images. Claim 25 of the '713 patent recites "allowing" a "single user adjustable exposure setting" to be changed, "selecting" an "exposure modification transform," "using" the selected transform to "transform the image," and "displaying the transformed image." Claim 21 of the '485 patent recites substantially similar limitations without the "displaying" step. Therefore, the "focus" and "character" of these claims are directed to an abstract idea of acquiring information (*i.e.*, the "allowing" step), manipulating information (*i.e.*, the "selecting" and "using" steps), and displaying results (*i.e.*, the "displaying" step). *See Electric Power* at 1353-54; *FairWarning*, 839 F.3d at 1094; *TLI*, 823 F.3d at 613; *Digitech*, 758 F.3d at 1347, 1350; *RecogniCorp*, 855 F.3d at 1326.

Courts have repeatedly held that employing mathematical formulas, such as an "exposure modification transform," to manipulate information (*e.g.*, image data)

1   is an abstract idea.  *See, e.g., Gottschalk v. Benson*, 409 U.S. 63, 64 (1972); *Parker*

2   *v. Flook*, 437 U.S. 584 (1978) (holding the claims merely provided "a formula for

3   computing an updated alarm limit"); *Electric Power*, 830 F.3d at 1354

4   ("[A]nalyzing information by steps people go through in their minds, or by

5   mathematical algorithms, without more, [are] essentially mental processes within

6   the abstract-idea category."); *Digitech*, 758 F.3d at 1351 (finding "a process that

7   employs mathematical algorithms to manipulate existing information to generate

8   additional information" an abstract idea); *RecogniCorp*, 855 F.3d at 1328 (same).

9        This case is similar to *RecogniCorp* and *Digitech*.  In *RecogniCorp*, the

10  Federal Circuit found that "a method whereby a user displays images on a first

11  display, assigns image codes to the images through an interface using a

12  mathematical formula, and then reproduces the image based on the codes" was an

13  abstract idea.  855 F.3d at 1326.  In *Digitech*, the Federal Circuit found that "a

14  process of organizing information through mathematical correlations and [] not tied

15  to a specific structure or machine" was an abstract idea.  758 F.3d at 1350.

16       Likewise, the asserted claims simply recite methods of manipulating image

17  data using a mathematical formula (*i.e.*, "an exposure modification transform"),

18  untethered to any specific structure.  Processes "that start[] with data, add[] an

19  algorithm, and end[] with a new form of data" are directed to abstract ideas.

20  *RecogniCorp*, 855 F.3d at 1327; *see also Purepredictive*, 2017 U.S. Dist. LEXIS

21  139056, at *13 ("[C]laims are directed to a mental process and the abstract concept

22  of using mathematical algorithms to perform predictive analytics.").  The asserted

23  claims are different from those in *McRO*, where "the claimed process uses a

24  combined order of **specific rules** that renders information into a specific format that

25  is then used and applied to create desired results[.]"  837 F.3d at 1315 (emphasis

26  added).  Here, no "specific rules" are recited.

27  **2.   The asserted claims recite results rather than any specific technical solutions.**

28

The asserted claims recite the effect or result rather than any specific means of producing the desired result.  For example, the asserted claims recite "selecting an exposure modification transform . . . account[ing] for a rendering used to produce the rendered image and **which appears as if a different exposure level was used by the image capture device**." (emphasis added.)  However, the asserted claims are agnostic as to *how* to "select an exposure modification transform" to "account[] for rendering used to produce the rendered image."  Nor do the claims provide any details as to *how* to achieve the result of "as if a different exposure level was used" to capture the image.  Finally, the asserted claims recite "using the selected [exposure modification] transform to transform" the image untethered to any specific ways of achieving them.  Such result-focused claims are deemed to be an abstract idea.  *See, e.g.*, *Affinity Labs*, 838 F.3d at 1269.

### B.      The Claims Recite No Inventive Concept

#### 1.      The asserted claims require nothing more than a generic computer implementation of an abstract idea.

The elements of the asserted claims, viewed individually or as an ordered combination, fail to recite any inventive concept.  The asserted claims do not recite any *tangible* components—let alone nonconventional computer components or computer functions—to perform the recited steps.  The recitation of an "exposure modification transform" does not add any inventive step.  *See RecogniCorp*, 855 F.3d at 1328 ("A claim directed to an abstract idea does not automatically become eligible merely by adding a mathematical formula.").  Any attempt by MPV to argue that the "exposure modification transform" is novel must fail.  This is because "the novelty of the mathematical algorithm is not a determining factor at all."  *Flook*, 437 U.S. at 591-92; *see also Synopsys*, 839 F.3d at 1151 ("The search for a § 101 inventive concept is [] distinct from demonstrating § 102 novelty.").

#### 2.      The specifications confirm no inventive concept.

The specifications of the '713 and '485 patent further confirm that the

1  purported invention has no "inventive concept."  First, the specifications admit that

2  the claimed processes can be implemented on a generic computer including a CPU,

3  a display monitor, a keyboard, and a mouse.  (*See, e.g.*, '713 patent at 3:37-52.)

4      Second, the specifications demonstrate that the asserted claims contain

5  nothing more than "well-understood, routine, conventional" elements.  *Alice*, 134 S.

6  Ct. at 2359.  For example, regarding the claimed step of "allowing a single user

7  adjustable exposure setting to be changed," the specifications state that the single

8  "user adjustable exposure setting" uses "**well-known** user interface techniques[.]"

9  ('713 patent at 4:62-65 (emphasis added); '485 patent at 4:61-64.)  The

10  specifications also describe implementing the claimed "exposure modification

11  transform" in a "lookup table."  ('713 patent at 4:46-50; '713 patent at 7:9-11; '485

12  Patent at 4:46-50; '485 Patent at 7:7-9.)  But as the specifications admit,

13  implementing a modification transform in a "lookup" table is also conventional.

14  ('713 patent at 1:53-57; '485 patent at 1:52-56.)  Moreover, using a "lookup table"

15  to modify images is simply "employ[ing] mathematical algorithms to manipulate

16  existing information to generate additional information," which "is not patent

17  eligible."  *See Digitech*, 758 F.3d at 1351; *Flook*, 437 U.S. at 595 ("[I]f a claim is

18  directed essentially to a method of calculating, using a mathematical formula, even

19  if the solution is for a specific purpose, the claimed method is nonstatutory.").

20      Finally, "relying on a computer to perform routine tasks more quickly or

21  more accurately is insufficient to render a claim patent eligible."  *OIP*, 788 F.3d at

22  1363.  (*See* '713 patent at 2:10-15 (describing "advantage[s]" of the purported

23  inventions, including: (1) "exposure problems can be properly compensated with a

24  minimum of user intervention"; and (2) "it is extremely simple for a non-expert

25  user to understand and use."); '485 patent at 2:7-12 (same).)

26  ## VI.    CONCLUSION

27      DJI respectfully requests that the Court grant its motion to dismiss.

28

1    Dated:     May 10, 2018                MORRISON & FOERSTER LLP

2

3                                           By: */s/ Bryan Wilson*

4                                                Bryan Wilson

5                                           Attorneys for Defendant
                                            DJI TECHNOLOGY, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28